Good morning. May it please the Court, my name is Stephen Flock. I represent the appellate Good Fortune Shipping SA. With me are Justice Sigmund and Brittany Aravik, who helped brief the case. I reserve five minutes for rebuttal. The challenge regulations are based on a false premise and an erroneous assertion. The false premise is that disallowing the attribution of bearer shares prevents taxpayers, like Good Fortune, from circumventing the ownership and residence requirements of Section 883C. The erroneous assertion is that without the challenge regulations, the IRS will have the time-consuming and onerous burden of chasing down and confirming the ownership of bearer shares. As to the first, the IRS can examine any Form 1120F claiming a Section 883 exemption. If it does, the taxpayer has the burden of proving that it meets the requirements of the Section. As to the second, the IRS does not have to track down ownership of bearer shares. Quite the opposite. Taxpayers, like Good Fortune, must prove to the satisfaction of the IRS the identity of the owners of the shares in their structure. There's no question that it's more difficult to prove ownership with bearer shares than otherwise. Isn't that correct? That would be true. And is that a problem that's addressed in the statute? No. It's not addressed in the statute. No. I mean, the burden is still on the taxpayer to prove ownership. So it's accepted that ownership is possession of bearer shares, so they are owned. The issue for the taxpayer, in this case Good Fortune, is to prove that they, in fact, did own them at the relevant time. Because the statute, really, when it was enacted in 86… You don't have any problem with what they did. Was it in 2010 that they… Well, that was just a… No, I mean, you don't have any problem with that. No, not at all. Because that really essentially takes what I'll call the classic bearer share and turns it really into a registered share in another form. Can I ask, how are the registered shares reflected in shipping companies? Well, these are private companies as if you would have any other private company. And if you have a registered share, it's really a share issued in the name of the shareholder. As opposed to, in the case of the bearer, it's simply issued to bearer. Yes, but where is it registered? In the books of the company? In the company. I mean, they would be held, as with any company, they would be held in the records of the company itself. There's no public register, as you know here, there's no public register of shares. And if the, in this case, if Good Fortune cannot prove ownership of the shares and residence of the shareholders, it will pay tax. If the court invalidates the challenge regulations, all that Good Fortune will have won is the opportunity to prove that the bearer shares in question are possessed by residents of qualified country during 2007. Why do you say that, that all they will have won is the opportunity? Because I thought the way you're briefing the case is that if you're right that the regulation can't be sustained as is, then you already would have proven it. No, no we don't. You don't take that position? No, no, no, no, I don't take that position. All we're asking is an opportunity to prove that there are qualified shareholders who are the true beneficial owners of a majority of the shares in Good Fortune shipping, period. So, but you made some submissions that would allow the agency to trace ownership of the bearer shares. Absolutely. We have to do that. And you're not taking the position that if you were to prevail that those submissions are necessarily sufficient? Not at all. Okay. We still have the whole burden and so the… Where's the sort of limit of the IRS's authority on ensuring that proof is sufficient? So, imagine you submitted everything you're proposing to submit and they said, ah, sorry, we're still not persuaded. Then we lose. Then we have to pay tax. But can you appeal in some way the reasonableness of their determination? Oh, I think we could. Oh, certainly. We could go to tax court and say that the position they've taken. For example, we've already provided in this case volumes of evidence about bank accounts, loan agreements, personal guarantees, other indicia of the ultimate beneficial owners of this company. But… And then would the test be something like our arbitrary or capricious rule? That is, if you gave them all that information, plus 24-hour photographs of the person holding the videos, of the person holding the bearer shares at every time of this entire life, and they still said no, would the way in which you appeal that would be in tax court to say it's arbitrary and capricious? Exactly. Is that the way in which it would go? Precisely. You wouldn't pay and then file a refund action? That's not a way – that's in a different context? Well, that could – certainly we could do that as well. We have a choice of either appealing to the tax court, paying the amount of tax due, and then going to the district court seeking – the court claim seeking a refund. You don't take the position, though, that the IRS could never determine that there's a class of ownership. I know you think the bearer shares don't fit this category. But there's a class of ownership, a type of ownership that's so difficult to prove up that that's just out of bounds, that we're just not going to have it. No, because in this case it seems to me that because the taxpayer has the burden of proof, the IRS simply sits back and says – because all the IRS has when it examines it, every 1120-F filed has a Schedule S with it. That's all they have. They have no way of knowing at that point in time whether the shares of the ultimate beneficial owners are held by nominees, they're held simply by straw men. They have no way of knowing the form of ownership. So they still have to make a case-by-case examination to determine if the people who are claiming to be the owners are truly the owners. And indeed, if you look at the follow the money rule section, 183-4C4, it says even if you have a stockholder of a corporation that issues shares, but in fact there's a private agreement that says the money flows to different parties, for example through either preference shares, through a contractual agreement, we want to know who is getting the money from this venture. That is the true ultimate beneficial owner. I think I might have been asking a question from the opposite direction. Suppose there's a situation in which a country allows ownership of shares that are just e-shares. So there's not even paper, and they just say, you know, these are basically e-shares, and they're traded on the e-market, and that's how we do ownership. And that country says that that's fine, and the IRS says, no, not for our purposes. That's just not something that is traceable in a way that's going to work. So we're just going to take that class of shares and say, you can't get the benefit of the exemption if your shares are traded on the non-paper e-market. Could the IRS do that? Well, again, I don't see the benefit of doing it, because this is all a priori before they even get to the exam. They're saying, in this regulation, what it says is you can't even come and try to prove your ownership, irrespective of the nature of what proof you have. You are automatically disqualified, period. You don't even get to the point of even – But the basis of that is a judgment that – It's too hard. It's too hard. And I think, to follow up on Judge Judy Watson's question, let's pause at the case where it's impossible actually to – Then the taxpayer is going to lose. The taxpayer is going to lose full. But what I'm saying is at the point that the service enters into the inquiry, it would be no different if it wasn't e-shares. I mean, that just makes it sound like your position is that the IRS always has to allow the taxpayer to try to prove ownership, even if the IRS has made a determination that there's a type of ownership that's basically untraceable. And suppose they go further and they say, this is a type of ownership that we've examined for the last 10 years. It's just riven with fraud. Clearly, if the IRS had come to some factual determination based on prior experience that this particular situation, then they would have a reasonable basis for going forward because there would be some facts that they could cite to. What I'm saying at this point, the only thing they've said is, listen, it's clear. They don't like bearer shares. I'm not here as an advocate for bearer shares. But what I'm saying is in this particular instance, the hypothetical you've posed, presuppose that the IRS has already investigated these situations, attempted to find out the proof, and has come up and said, we just can't do it. In this case. Bearer shares are diminishing in numbers, but at one point they were very popular. Is that right? They were used very extensively in the shipping industry. This is not a new invention or a way to get around rules. Precisely. I think what's happened most recently is that bearer shares have been used in what's called for nefarious purposes. But in terms of the shipping industry, bearer shares have been a common for centuries since corporations began in the 18th century. I think it wasn't that uncommon even for public corporations to use bearer shares. Well, exactly. Bearer bonds. There are a lot of bearers. All right. Thank you. Excuse me. Good morning, Your Honors. My name is Richard Calveroni, and I represent the Commissioner of Internal Revenue in this appeal. May it please the Court. In Section 883 of the Internal Revenue Code, Congress enacted an exemption from tax that depends in part on the residence of a foreign shipping corporation's shareholders. The regulations at issue in this case simply say that to determine a corporation's eligibility for that exemption, the IRS must be able to reliably determine the residence of its shareholders. And because the use of bearer shares prevents the IRS from doing so, the IRS will not count bearer shares when determining whether a corporation is eligible. That's not the present view, though, right? In 2010, you went to a different regime that allows the use of bearer shares. Only certain bearer shares, Your Honor. Only bearer shares that are immobilized or dematerialized. And either immobilized or dematerialized bearer shares are, as Mr. Flott stated, much closer to registered shares. There's a contemporaneous record kept in the corporation's books of ownership of those shares. And in the case of traditional bearer shares, there's no such record. It's just you have to trace, to determine the ownership of bearer shares, you would have to trace who possessed pieces of paper at any given time. So can I ask this question, that if the colloquy towards the end of your colleague's argument suggests that if the IRS had given a fulsome explanation of why a particular type of efficient degree of reliability, and maybe even that it's a type of ownership that's just been indicative of fraud before, and so we're just not going to allow taxpayers to prove ownership with this particular class and had done the work to show that, that might be one thing. But as far as I can tell, there's one sentence in the Federal Register of Materials that explains this. And I may be missing something, but the sentence I saw was, due to the difficulty of reliability demonstrating the true ownership of such shares, the re-proposed regulations do not adopt its suggestion in the interest of sound tax administration. Your Honor, I would say two things about that. One is that good fortune statement that had the IRS had extensive experience in this area and then closed it off, that would be okay. That's a concession that this is not a Chevron step one case. That's a concession that the regulations here are consistent with the plan. So suppose I agree with you on that, that it's not a step one case, that it's really about, it's either, you know, it's arbitrary and capricious or something, but it's really about the lack of work done by the IRS to exempt an entire class of ownership from proof. Your Honor, I would say that under the Chenery rule, the agency does not have to provide a complete, detailed explanation. It just has to be enough of a hook in the regulations to determine, you know, why these regulations are— I don't remember anything in Chenery about enough of a hook. That's not a phrase I remember. It's not a specific phrase. All you've said, in addition to the single sentence in the proposed regulation, is in the final regulation, we retain this provision due to the difficulty of reliably demonstrating the true ownership. What if you had that sentence with respect to ordinary shares? What if you had that sentence with respect to nominees? I mean, would we have—you haven't given us any—your brief has arguments, but Chenery means we don't rely on your brief. Chenery actually means we rely on what the agency stated in the regulation. And all you said is you think it's difficult. Yes, Your Honor, but two things about that. One is that Good Fortune has forfeited a Chenery argument along those lines, does not make that argument on appeal. This is a classic Chevron Step 2 question, right? Yes, Your Honor. So we need to evaluate your explanation to determine whether it's reasonable, right? Yes. And if you don't have an explanation, then it's not reasonable. But there is an explanation here, Your Honor, the explanation that it's difficult to reliably determine the true ownership of shares. I think the Chief Judge asked the same question that I was getting to. So suppose that that exact same thing had been done with respect to registered shares. The same sentences, the two sentences, the one dealing with the proposed regulation and the one dealing with the following regulation, and it's just a conclusion about registered shares. Your Honor, if it were the case with bearer shares and registered shares, then the exemption would effectively be a dead letter. So the IRS would not— No, well, they allow bearer shares. Suppose that they allow bearer shares and then just say—or you, I'm sorry. The IRS says registered shares are out of bounds because you can't trace ownership. Well, Your Honor, that would not be reasonable because it's much easier to trace the ownership of registered shares than just— Yeah, all you've got is a sentence. So you just have it once. I think you must be right, but if all we have is two sentences, how do we know that? There's no dispute about that, Your Honor. The parties have agreed that bearer shares have these characteristics that give rise to the— Not to—no, I don't think the parties agreed that they have those characteristics to an extent that should justify categorically excluding bearer shares. Well, certainly, Good Fortune believes that bearer shares can't be categorically excluded, but there's no dispute. In fact, Good Fortune's reply brief expressly concedes that when you have registered shares, there's a contemporaneous record kept of those shares. In bearer shares, there's no record kept of those shares. And that's the difference. That's the key difference underlying the two shares. I get that, but the fact that there's no record kept contemporaneously doesn't necessarily mean that it's reasonable to exempt the entire class. It could mean that. It definitely could, but just the mere fact that that— I don't even think even that is said, actually, in the administrative materials. I think it's just a fact that everybody understands, and I'll take it as a given. But that's not said. All that's said is ownership is hard to prove. That's correct, Your Honor, but for there to be a reliable way to demonstrate the ownership of bearer shares at a past point in time, it would have to be something like what Chief Judge Garland mentioned of someone having a 24-hour video of a vault, keeping video of that from 2007, that shared issue here, until now. This doesn't say that. This says difficulty of reliably demonstrating it. It doesn't say it's impossible to demonstrate. It just says difficulty. How much difficulty would be sufficient to exclude a class of shares? The difficulty given by a class of shares that is designed to be anonymous and secret and hidden ownership, Your Honor, is, I think, more than sufficient. Well, it doesn't say that in this regulation. It doesn't say anything at all about this question. In a private shipping company, how do they approve registered shares to you? Your Honor, they would come in and fulfill all the substantiation requirements in the regulations, which require ownership statements from each level of ownership. And then, in examination, the IRS— Ownership statements by the— By anyone who owns shares of the corporation. Right. By anyone behind those intermediaries and on down to each individual. Yes, but the same would be true for bearer shares. The person would have to make the same statements, right? Yes, Your Honor. So what's the difference for registered shares? The difference is, in the case of registered shares, the IRS can verify that by asking the corporation for the contemporaneous records that it kept of the ownership of those shares. Right. Now, your belief, your concern here is that the bearer shares people are lying. The corporation and the bearer share people would be lying. Is that right? Our concern is that it would be— Who's trying to prove? Our concern is that it would be very easy to abuse this exemption along those lines. Yes, Your Honor. Well, let's be clear. Imagine that the corporation says these are the bearers and they are residents, and the bearers say we are the bearers and they are residents, and it's under oath. Okay? They all say that under oath. Now, you say that's not good enough because you think they would perjure themselves. Right? Or because there is no contemporaneous records. Everyone could be making a mistake, Your Honor. You think this is a problem of a mistake, not of a question of intentional fraud? I'm saying the situation could—the regulation is intended to cover both situations. Well, that is, of course, not reflected here. I thought the point of your brief, there was nothing in your brief about accidentally making misstatements. I thought your whole point here is you're trying to prevent the risk of fraud, right? That is the larger point, yes, Your Honor. Let's deal with that one first. Okay. So on the bearer shares, you get both the shipping company and the bearers to say under oath they did it. You say that's not good enough because they could be fraudulent. Okay? With respect to the registered shares, you ask the corporation to produce what they say, quote, are their contemporaneous records. But if they were as nasty folk as you've already assumed with respect to the same companies for their bearer shares, why don't they keep two sets of books and they produce just one set of books which they provide to you which says 100%? It's possible that they might do that, Your Honor. But it's bedrock Chevron law that an agency does not have to cut off, in this case, every potential avenue for abuse of a tax exemption in order to cut off some potential avenues of abuse for a tax exemption. There has to be some explanation for us about why one works and the other doesn't, and that one sentence of difficulty doesn't quite get us there. I think it does, Your Honor. The test here is the residency of the shareholders of a foreign shipping corporation. Bearer shares are designed to throw a cloak of secrecy over the identity and, therefore, the residency. Private companies are designed to throw a cloak over the transparency of their internal operations. That's why they're not public companies. So you could make the same argument. Yes, Your Honor, but the substantiation requirements in the regulations are themselves designed to get over that problem, to pull back the curtain as you go layer by layer down. So in 2010, there was no disavowing of the statement that there's a difficulty of reliability, demonstrating the true ownership of such shares being bearer shares. That's correct. It's just that the regulations came up with a way to actually reliably demonstrate the true ownership of such shares. Not of traditional bearer shares, Your Honor, of different kinds of bearer shares for which there are contemporaneous records. No, but I don't understand that because they're not legally a different category, right? It's just that what happens is in order to make use of the exemption, the companies have to keep the contemporaneous records. Specifically by either dematerializing their shares, which means actually getting rid of the pieces of paper, or immobilizing by keeping the book akin to the book that you would have for registered shares. They're still called bearer shares. They're still called bearer shares, but they're specifically immobilized or dematerialized bearer shares. And under the law of some countries, not the U.S., but some other countries, my understanding is that immobilized and dematerialized bearer shares are legal and traditional bearer shares and not. Yeah, okay, but they're still all called bearer shares. So there's a way to have a thing called bearer shares that has attended to it sufficient security about ownership that the IRS is willing to count those. Under current law, yes, but as was discussed in Mr. Flotstein, that is a relatively recent innovation. That was not in widespread use in 2007. Can I ask one last question, which is suppose, and you asked the question, I know you resist the premise, but assume that the regulation is determined to be invalid and not a Chevron Step 1, but a Chevron Step 2. What happens then? What happens then is I think in this case, Your Honor, there has to be a remand to the IRS, for the IRS to make a determination of whether good fortune is entitled to the exemption. I assume that the IRS would have to do that on a case-by-case basis for any other tax years before the 2010 amendments kicked in, and then the 2010 regulations, however, would remain valid at this time because they're not at issue in this case. And what would happen with other taxpayers beyond this one? Beyond this one, for years under the regulations, the IRS would again have to make case-by-case determinations as to whether those taxpayers are entitled to the exemption. Thank you, Your Honor. Not quite. One more question. There was a guidance at some point that allowed proof of ownership of various shares, is that right? Yes, Your Honor, that was Revenue Procedure 91-12. And that was, I take it, reversed by the rule that we have before us now? Yes, Your Honor, that's correct. And was there any explanation as to why what was sufficient for proof in what year was that? 1991. In 1991 was no longer sufficient in 2003? The regulations were first proposed in 2000 and became final in 2003. Was there any explanation for why the specific forms of proof that were permitted in 91 are now too difficult to reliably demonstrate? Your Honor, there actually were no specific forms of proof allowed in 1991. It simply said documentation sufficient. And revenue procedures are actually not binding authority on substantive questions like what is sufficient here. They're simply guidance to the taxpayer. But the guidance to the taxpayer was that there would be something that would be sufficient. Yes, but it was not specified what. Fine. But was there any explanation given why there was no longer anything that was sufficient? Your Honor, the explanation is simply that it's difficult to reliably demonstrate the true ownership of various shares. Do you agree that the bearer's share is a form of ownership? Oh, definitely, Your Honor. In fact, the regulations state as much. Okay. Thank you. Thank you, Your Honor. Is there any time left? I'll give you another minute. I have nothing further to add unless Your Honor has questions. No. Thank you. Thank you very much. We'll take the matter under submission.
judges: Garland, Griffith, Srinivasan